<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEATHER LIMBECK,<br><br>            Plaintiff,<br><br>     v.<br><br>COUNTY OF CUMBERLAND, <u>et</u> <u>al.</u>,<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 03-5816 (JBS)<br><br>**OPINION** |

APPEARANCES:

Michael L. Testa, Esq.
Maria V. Go, Esq.
BASILE & TESTA, P.A.
424 Landis Avenue
Vineland, NJ 08360-8198
    Attorneys for Plaintiff

Steven L. Rothman, Esq.
Gary D. Wodlinger, Esq.
LIPMAN, ANTONELLI, BATT, DUNLAP, WODLINGER & GILSON, P.C.
110 North Sixth Street
P.O. Box 729
Vineland, NJ 08362-7580
    Attorneys for Defendants County of Cumberland and Cumberland
    County Board of Chosen Freeholders

**SIMANDLE**, District Judge:

The present motion is before the Court on the motion of

Defendants County of Cumberland and Cumberland County Board of

Chosen Freeholders for summary judgment.  Defendants' motion is

in response to a claim brought by Heather Limbeck, an individual

managing the commissary in Cumberland County's prison.  Limbeck's

complaint alleges (1) violations of Title VII and the New Jersey Law Against Discrimination; (2) a violation of her procedural due process rights when the prison's warden revoked her security clearance; and (3) tortious interference with contract.  For the reasons discussed below, the Court will grant Defendants' motion for summary judgment.  Both parties have submitted to the Court that the central issue in this case is whether Limbeck was a de facto employee of Cumberland County as well as being an employee for Aramark Corporation, the independent contractor who operated the commissary.  In concluding that, as a matter of law, Limbeck is not a <u>de facto</u> County employee, the Court concludes that Plaintiff cannot maintain a cause of action under Title VII or NJLAD or for a violation of her procedural due process claims as Limbeck failed to present any evidence that she had a reasonable expectation of being afforded the procedural rights afforded to employees of Cumberland County.  Finally, the Court finds that Limbeck has presented no triable issues of fact suggesting that Defendants acted with malice when Defendants sought to enforce prison rules by revoking Limbeck's security clearance after discovering that she violated the prison's rules prohibiting contraband.

## I.   <u>BACKGROUND</u>

Beginning on May 23, 2000, Plaintiff Heather Hart Limbeck ("Plaintiff") was employed with Aramark Corporation ("Aramark"). Aramark served as an independent contractor that supplied food services at the Cumberland County Jail (the "Prison") and, according to Plaintiff's employment contract with Aramark, Plaintiff served as the supervisor of the Prison's commissary. (Def.'s Statement of Material Facts ¶ 1; Certification of Heather Limbeck ¶ 1.)  Aramark's food services contract with Cumberland County states that Aramark employees will perform their duties for the Prison along with jail inmates performing food services work and, according to Plaintiff, the contract contains a detailed description regarding how Aramark employees were to perform their duties at the Prison.[1]  (Pl.'s Ex. C, Vendor Contract.)

Among the policies outlined in the vendor contract between Aramark and the jail was one that required all employees of Aramark "to adhere to all Cumberland County Jail policies, procedures and practices...[and that] Cumberland County Jail security personnel shall be responsible for taking necessary disciplinary action." (Vendor Contract.)  In addition, when she

---

[1]  Because Plaintiff has only provided a few pages of Aramark's vendor contract with the Prison, it is not possible for the Court to determine the level of detail that Aramark described how Aramark was to operate the Prison's commissary.

began her employment at Aramark, Plaintiff agreed to be bound by
Aramark's Business Conduct Policy and received an Aramark
employee handbook.  Aramark's employee handbook stated that an
employee could be immediately discharged if he (1) lost his
security clearance, (2) violated Aramark's client's security
policies or procedures or (3) "use[d] or distribut[ed]...
contraband on [Aramark] and/or client property or premises."
(Pl.'s Br. at Ex. E, Aramark Employee Handbook.)

### A. Plaintiff's Termination

In March of 2003, as a result of a tip from a confidential
informant and internal investigation in the jail, investigators
determined that Plaintiff was providing contraband - in the form
of cigarettes and food (specifically, breakfast items from
McDonald's Restaurant) - to inmates in the Prison.  (Def.'s
Statement ¶¶ 18-19; Pl.'s Br. at Ex. H, Investigative Report of
Sgt. W. Wroniuk, dated 3/14/03) During the course of the internal
investigation, Sgt. Walter T. Wroniuk stated that he found
cigarettes hidden in the commissary.  (Id.)  When questioned
about the hidden cigarettes, Plaintiff initially denied that she
brought cigarettes into the Prison for inmates.  A short time
later, however, Plaintiff admitted that she brought food into the
Prison for inmates.  (Id.)

Such action violated both Aramark's and the Prison's anti-
fraternization and contraband policies as well as the Prison's

security policies. Such a violation was grounds for immediate
discharge. (Def.'s Br. at Ex. E; Pl.'s Br. at Ex. J, Report of
G. Saunders, dated 4/25/03.)[2] As a result of Plaintiff's
admission, Warden Saunders met with Plaintiff's supervisor at
Aramark (James McNally), advised him of the allegations of the
confidential informant, told him of the findings of the Prison's
internal investigation, and told McNally that he intended to
suspend Plaintiff's security clearance at the Prison. (Deposition
Transcript of G. Saunders at 138-40; Pl.'s Statement ¶ 33; Pl.'s
Br. at Ex. H, Internal Affairs Investigation Report, 3/14/03.)
McNally responded that, if Saunders was going to suspend or
cancel Plaintiff's security clearance, McNally would have no
choice but to terminate Plaintiff. (Saunders Dep. Tr. at 140.)

Saunders then instructed Sgt. Wroniuk to interview Plaintiff
and to "suspend her [security] clearance [unless] anything
substantial came out of the interview, [then] to go ahead and
cancel her security clearance." (Id. ¶ 40.) During the March
13, 2003 interview, Wroniuk informed Plaintiff that the jail was

_____

[2] Specifically, the policy prohibits an employee from
"carrying...contraband on [Aramark] and/or client property or
premises" or fraternizing with inmates. (Vendor Contract.)
Fraternization includes "supplying inmates with...cigarettes...or
contraband." (Id.) "Contraband" is defined as "any item that is
not issued to the inmate by the facility as they enter the
jail...." (Id.) Plaintiff argues that (1) at times, Plaintiff's
supervisor (James McNally) permitted Plaintiff to bring in food
for inmates and (2) that Plaintiff observed corrections officers
bringing in food for the inmates. (Pl.'s Statement at ¶ 10, 11.)

going to "pull" her security clearance and escort her from the
building.  (Id.; Limbeck Cert. ¶ 14; Deposition Transcript of
Officer Abbott at 24.)  Plaintiff testified that, after being
escorted from the building, she called McNally who informed
Plaintiff that, because she no longer had security clearance to
work at the jail, she was terminated.  (Def.'s Statement ¶ 78;
Pl.'s Ex. H, Internal Affairs Investigation Report, 3/14/03.)

**B.  Facts Surrounding Plaintiff's Affair with Escobar and
     Alleged Sexual Harassment**

On April 22, 2003, approximately one month after Plaintiff's
security clearance was suspended and she was terminated from
Aramark, Plaintiff filed a Notice of Tort Claim against
Cumberland County.  (Saunders Report, dated 4/25/03.)  On April
23, 2003, Warden Saunders assigned Lt. Palau to conduct an
investigation regarding an alleged sexual relationship between
Plaintiff and Assistant Warden Rolando Escobar that Plaintiff had
disclosed in the Notice of Tort Claim.  (Id.)  After being
questioned, Escobar eventually admitted that he had a sexual
relationship with Plaintiff.  In her deposition testimony,
Plaintiff too admitted that she and Escobar had a consensual
sexual affair in late 2000.  (Def.'s Def.'s Response to Pl.'s
Statement at ¶ 15.)  Specifically, Plaintiff admitted that she
engaged in sexual relations with Escobar during work hours five
and ten times on jail property (usually in Warden Saunders'

office or a jail bathroom).[3]  (Limbeck Dep. Tr. at 36-52.)
According to Plaintiff, Escobar was the assistant warden of the
Prison (a supervisory role to Plaintiff) during the time
Plaintiff and Escobar conducted their affair.  (Pl.'s Statement ¶
16.)  According to Plaintiff, prior to and during the
relationship, Escobar promised to secure Plaintiff a position as
a corrections officer and help promote Plaintiff's brother, Sgt.
Keith Fauconniere.  (Limbeck Dep. Tr. at 46.)

        Plaintiff terminated the relationship in March of 2001.
(Def.'s Response at ¶ 15.)  After Plaintiff broke off the affair,
Plaintiff claimed that Escobar continued to make unwanted sexual
advances towards her and lewd and sexually suggestive remarks.
(Id.)  In order to avoid Escobar's advances, Plaintiff claims
that she often came in late to work or left early.  (Id. at 54-
55.)  Plaintiff also testified that she felt that if she refused
Escobar's requests, she would be terminated and did not report
Escobar's harassing behavior to Aramark, Defendants or the Equal
Employment Opportunity Commission because she believed that a

_____

        [3]  Such actions, according to Defendant, were in violations
of Aramark's employee policies that state that certain conduct
"may result in immediate discharge" including "[i]ndecent
behavior and/or immoral conduct on Amarark's time or on client's
premises."  (Def.'s Br. at Ex. D.)

complaint against the assistant warden would be futile and result in her losing her job.[4]

## II.   PROCEDURAL HISTORY

On December 5, 2003, Plaintiff filed this action against Cumberland County, the Cumberland County Board of Freeholders and several other defendants. [Docket Item No. 1.]  The Complaint alleges: (1) violation of Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination (Count One); (2) unlawful employment practices under the New Jersey Law Against Discrimination (Count Two); (3) failure to give Plaintiff due process (Count Three); and (4) tortious interference with contract relating to Plaintiff's business relationship with Aramark (Count Four).  Defendants moved for summary judgment on January 26, 2006. [Docket Item No. 23]  Plaintiff filed opposition on March 2, 2006 [Docket Item No. 25] to which Defendants replied on March 24, 2006. [Docket Item No. 27].  The Court heard oral argument on Defendants' motion on July 27, 2006.

## III. DISCUSSION

### A.   Summary Judgment Standard of Review

Defendant moved for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P.  A court may grant summary judgment when the

---

[4] Indeed, in her deposition, Limbeck stated that it was her belief that her clearance was revoked because she refused Escobar's constant phone calls the week prior to her termination. (Limbeck Dep. Tr. at 265.)

materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. See id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.[5]

## B.   Plaintiff's Claims under Title VII and NJLAD

In Counts One and Two of the Complaint, Plaintiff alleges that Defendants engaged in gender-based discriminating against her in her employment at the Prison in violation of Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("NJLAD"). (Compl. ¶ 31.) Specifically, Plaintiff alleges that Escobar, who supervised Plaintiff's supervisor, harassed her for eight months after she terminated

---

[5] Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50. Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

their sexual relationship. (Id.) Such harassment, according to Plaintiff, "was severe and pervasive creating a hostile work environment, which was both subjectively and objectively abusive to female employees." (Compl. ¶ 37.) Plaintiff also alleges that Cumberland County (the "County"), as the employer of Escobar, is liable under the doctrine of respondeat superior. (Id. ¶ 38.)

In their motion for summary judgment, Defendants first argue that summary judgment is appropriate because Plaintiff cannot demonstrate that she was an "employee" of the County for purposes of imposing Title VII and NJLAD liability on Defendants. Because Plaintiff has an employment contract with Aramark, Plaintiff cannot and does not deny that she is an employee of Aramark. Instead, Plaintiff argues that she is both an Aramark employee and a de facto employee of Cumberland County.

### 1. What is an "Employee" for Purposes of Title VII and NJLAD?

A plaintiff "may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986). In the Third Circuit, a plaintiff bringing a claim of sexual harassment under Title VII because of an intimidating and offensive work environment must establish "by the totality of the circumstances," the existence of a hostile or abusive working environment "which is severe enough to affect the

10

psychological stability of a minority employee." Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (quoting Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510 (11th Cir. 1989))(internal quotations omitted).[6]

Once the plaintiff establishes the requisite severity of the hostile work environment, the plaintiff must then demonstrate that the hostile work environment should be imputed to the plaintiff's employer.  See Knave v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997)("Even if a work environment is found to be

---

[6] In Andrews, the Third Circuit established five factors that a plaintiff must establish to bring a successful hostile work environment claim against his or her employer under Title VII: (1) "the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondent superior liability existed." Andrews, 895 F.2d at 1482; Jensen v. Potter, 435 F.3d 444 (3d Cir. 2006)(hostile work environment as retaliation for exercise of Title VII rights); Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (discrimination based on national origin).

In Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001), the Third Circuit described the standards for a hostile work environment claim as applied to sex discrimination as follows:

> Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment....  In order to be actionable, the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment.

Weston, 251 F.3d at 425-26 (citing Spain v. Gellegos, 26 F.3d 439, 446-47 (3d Cir. 1994)).

hostile, a plaintiff must also show that the conduct creating the hostile work environment should be imputed to the employer.") Such imputation to the employer occurs where "the defendant knew or should have known of the harassment and failed to take prompt remedial action."  <u>Andrews</u>, 895 F.2d at 1486.

Because the protection of Title VII extends only to those who are "employees" and does not extend to independent contractors, it is the plaintiff's burden to prove the existence of an employment relationship.  <u>See</u> <u>EEOC v. Zippo Mfg. Co.</u>, 713 F.2d 32, 35 (3d Cir. 1983); <u>Walker v. Correctional Med. Sys.</u>, 886 F. Supp. 515, 519 (W.D. Pa. 1995).  Because Title VII does not define the term "employee," courts "should use the common-law agency test to determine employee status."  <u>Walker</u>, 886 F. Supp. at 520 (citing <u>Nationwide Mutual Ins. Co. v. Darden</u>, 503 U.S. 318 (1992)).  Similarly, NJLAD prohibits employment discrimination, including sexual harassment, by an "employer."  N.J. Stat. Ann. 10:5-12a; <u>see</u> <u>also</u> <u>Chrisanthis v. County of Atlantic</u>, 361 N.J. Super. 448, 453 (App. Div. 2003).  Moreover, who is considered an "employee" and thus protected by NJLAD is a matter of New Jersey common law.

Both the Third Circuit Court of Appeals and the New Jersey Appellate Division have articulated the same twelve-factor test for a trial court to use in order to determine whether an individual is an "employee" for purposes of Title VII and NJLAD.

12

See Zippo Mfg. Co., 713 F.2d at 37; see also Chrisanthis, 361 N.J. Super. at 453 (citing Pukowsky v. Caruso, 312 N.J. Super. 171, 177-80 (App. Div. 1998)); DaBronzo v. Roche Vitamins, Inc., 232 F. Supp.2d 306, 317 (D.N.J. 2002).  The twelve factors are:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation--supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

Pukowsky, 312 N.J. Super. at 182-83.

Recently, in reviewing a trial court's grant of a defendant's motion for summary judgment, the New Jersey Appellate Division applied this twelve-factor test under similar facts as those in the present case.  See Chrisanthis, 361 N.J. Super. at 453.  In Chrisanthis, the court addressed the issue of whether a nurse -- who was employed by a company contracted to provide healthcare services to inmates at a county prison -- was an employee of both the company and the county for purposes of determining whether the county could be held liable under the NJLAD.  Id. at 454 (plaintiff claimed that she had a dual employer relationship with both [the company] and the county.)  Because the facts of the Chrisanthis case are so similar to those confronted in this Court in the present case, the Chrisanthis'

13

court's analysis of the twelve factors will guide this Court's analysis.

### 2. Factors Weighing Against Determining that Plaintiff is a County Employee

Applying the twelve-factor test to the facts of this case, it is apparent that six factors plainly indicate that Plaintiff was not a County employee.  First, Plaintiff's activities as the manager of the prison commissary were supervised by James McNally, an Aramark employee and the man Plaintiff referred to repeatedly as her "boss" (Factor 2).  While Escobar may have been nominally in charge of overseeing the commissary according to the prison's chain of command (along with the mail room, transportation, food services, work release, admissions and other departments), there is little dispute that McNally, on behalf of Aramark, directly supervised Plaintiff and the day-to-day operations of the commissary.  (Pl.'s Opp. Br. at Ex. D.)   Next, Plaintiff was employed as the manager of the commissary at the prison for only about two-and-a-half years (from November of 2000 through March of 2003).  The Court finds that this short period of employment militates against finding her to be a County

14

employee (Factor 5).[7]  Third, Plaintiff was under contract with and paid directly by Aramark (Factor 6).

Fourth, the manner in which Plaintiff was terminated from Aramark suggests that Plaintiff was not an County employee (Factor 7).  Contrary to Plaintiff's argument, Defendants did not terminate her employment with Aramark; rather, Warden Saunders suspended her security clearance pending an investigation into whether she was providing inmates with contraband.  Indeed, Plaintiff has failed to point the court to anywhere in the record suggesting that Defendants, through its vendor contract with the Prison, had the authority to terminate Plaintiff or any other Aramark employee.  In addition, Plaintiff has submitted no evidence that Aramark - a Fortune 500 company with over 240,000 employees and operations in 20 countries - could not have employed her at another facility or in another capacity after Defendants revoked her security clearance.  Fifth, Plaintiff's work managing the prison commissary cannot be said to be an integral part of Defendants' "business" (Factor 9).  Defendants'

---

[7] The Court notes that its decision that a period of employment of approximately two-and-one-half years was sufficiently short to militate against a finding that Plaintiff was a County employee is in line with the New Jersey Appellate Division's decision in Chrisanthis.  See 361 N.J. Super. at 456 (finding that employment of three years was a "relatively brief period of employment militates against finding her to be a County employee....); compare with DaBronzo, 232 F. Supp.2d at 317 (court determined that the thirty-year span of employment of an asbestos-removal worker indicated that he was more readily classified as an employee than independent contractor).

15

"business" here was to operate a prison - to confine and control convicted criminals.  The Prison commissary, which provided inmates with a place to purchase non-essential items was unquestionably an incidental, rather than integral, function of the Prison.[8]

Finally, the Court finds that the intentions of the parties were that Plaintiff would be an employee of Aramark and that Aramark would be an independent contractor providing services at the Prison. Plaintiff has not presented any material facts that would allow the Court to infer that the parties intended Plaintiff to be a County employee (Factor 12).  Plaintiff entered into an employment agreement with Aramark in which she agreed to work for Aramark as part of a team servicing Aramark's contract with the Prison.  When asked at her deposition about her employment status, Plaintiff admitted that she was an Aramark employee and that Aramark was "contracted staff" at the Prison. (Limbeck Dep. Tr. at 167.)  Moreover, even viewing the fact that in 2002, Plaintiff was listed as an "employee" in the Cumberland County Department of Corrections Policy and Procedures Manual (the "Manual") in a light most favorable to Plaintiff (as the Court must at this stage in the proceedings), the Court places

---

[8] This view is line with that of the appellate court in Chrisanthis, which held that the provision of medical services to inmates (like those of laundry and food services) is an incidental rather than integral function of a prison.  See Chrisanthis, 361 N.J. Super. at 461-62.

16

little weight on this fact.  (Pl.'s Opp. Br. at Ex. D.)  The list
clearly identifies certain people as Aramark employees and
includes Plaintiff in the grouping of Aramark employees working
at the Prison (even though it does not specifically identify
Plaintiff as an Aramark employee.)

### 3.   Factors Weighing in Favor of Determining that Plaintiff is a County Employee

Several factors weigh in favor of this Court determining
that Plaintiff is a County employee.  First, Plaintiff, as the
manager of the prison commissary, does not hold a position of
skill that is not possessed by any other County employee at the
Prison (Factor 3).  This is not to say that Plaintiff lacked
significant management responsibilities, but only that
Plaintiff's position sufficiently distinguishable from other
positions other courts have deemed as "skilled."  See
Chrisanthis, 361 N.J. Super. at 456 (a licensed practical nurse
held a skilled position); DaBronza, 232 F. Supp.2d at 317 (a
contractor retained to remove asbestos from a facility possessed
"a specialized job skill.")   Second, the vendor contract between
Aramark and Defendants provided that Aramark would provide
services of running a commissary on the Prison premises and, in
fact, Plaintiff performed all of her duties on the prison
property (Factor 4).  This factor -- who furnishes the equipment
and workplace -- weighs in favor of the Court determining that
Plaintiff was an employee of the County.

### 4.   Neutral Factors

It is undisputed that Plaintiff was under an employment contract with Aramark.  As such, it is safe to assume that Aramark provided Plaintiff with vacation time (Factor 8), insurance and retirement benefits (Factor 10) and paid the employer's portion of her Social Security taxes (Factor 11).  However, because Defendants have failed to provide evidence to this effect (or to provide either a copy of Plaintiff's employment agreement with Aramark or a complete copy of Aramark's employee handbook, for that matter) the Court will not assume as much.  As such, the Court will consider these three factors as neutral factors that do not weigh one way or the other.

The Court also finds that Factor 1 –- the employer's right to control the means and manner of the worker's performance –- is a neutral factor.[9]  At oral argument, Plaintiff argued that this Court should follow the decision of <u>Walker v. Correctional Medical Systems</u>, 886 F. Supp. 515 (W.D. Pa. 1995) and determine that, because Plaintiff and Defendants were parties to an express contract (the Manual) that established specific criteria for how Plaintiff should perform her job, the Court should conclude that the County had substantial control over Plaintiff and in turn could infer that Plaintiff is a County employee.  In <u>Walker</u>,

---

[9] The Court notes that many courts consider Factor 1 as "most important of [the twelve] factors."  <u>Franz v. Raymond Eisenhardt & Sons, Inc.</u>, 732 F. Supp. 521, 528 (D.N.J. 1990).

plaintiff was a nurse employed by a company that contracted with Allegheny County to provide medical services to the Allegheny County Jail.  Id. at 518.  The contract contained express language that provided the jail's warden with direct control over the independent contractor's personnel, allowed the warden to assign nurses to perform "additional duties" and gave the warden authority to direct the provision of medical services for a particular inmate.  Id. at 521.  The Walker court stated these express contractual rights are sufficient proof of control by the county to support the inference that the nurse was a county employee.  Id.

In contrast, the New Jersey Appellate Division in Chrisanthis held that the absence of an express contract between the County and an independent contractor which gave the County the right to direct the work of nurses weighed in favor of finding that the nurse was not a County employee.  See Chrisanthis, 361 F. Supp.2d at 465.  Furthermore, the courts in both Chrisanthis and DaBronzo discounted the defendants' exertion of control over an independent contractor when the "supervision was limited to ensuring compliance with safety procedures...and maintaining control over premises."  Id. at 464; DaBronzo, 232 F. Supp.2d at 316-17.

For a number of reasons, this Court will decline to follow the holding in Walker, finding this case distinguishable from

19

<u>Walker</u> in a number of ways.  First, here there is no express contract between Plaintiff and Defendants.[10]  The Court disagrees with Plaintiff's assertion that, because Defendants provided Plaintiff (an employee of an independent contractor providing services to the Prison) with a copy of the Manual at the beginning of her employment, that the Manual constitutes an express contract between the parties.  If it did, it would render the Aramark employee handbook superfluous even though the Aramark handbook specifically addressed her employment status.  Second, unlike here, the warden in <u>Walker</u> had the right to terminate the plaintiff, direct her in her performance of her nursing duties, as well as assign her additional duties.  Neither Warden Saunders or anyone at the Prison was given these rights.

To be sure, the County did exert some degree of control over the operations of the commissary, since it was located in the County's premises and had to operate consistent with the County's

---

[10] Plaintiff argued that, under <u>Woolley v. Hoffman-La Roche, Inc.</u>, 99 N.J. 284, 285-86 (1985), the Manual Defendants gave to Plaintiff at the commencement of her working at the Prison constituted a binding  contract between the parties. In <u>Woolley</u>, the New Jersey Supreme Court held that an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer. <u>Id.</u>  The Court finds this case distinguishable as Plaintiff was never employed by the County.  Thus, the act of giving Plaintiff a County Manual outlining the safety and security procedures of the Prison did not create a binding express contract between the parties, especially in light of the fact that her employee handbook stating the bases for immediate discharge, was provided by Aramark.

security concerns for the jail.  Most significantly, the County
required Plaintiff to supervise prison inmates "employed"
stocking inventory at the commissary.  In addition, although
Plaintiff did not raise this point in her papers or at oral
argument, the Court assumes that the County placed some
restrictions on both the commissary's hours of operation and the
type of goods sold there (as it is hard to imagine the County
allowing the commissary to be open very late in the evening or
selling items undermining the good order of the facility).  On
the other hand, nothing in the record suggest that Defendants
attempted to control Plaintiff's management of the commissary in
other ways.  For example, there is no evidence that Defendants
controlled Plaintiff's day-to-day operations of the commissary
(e.g., pricing of products, ordering of inventory, dealing with
accounts) or that anyone at the Prison could assign additional
work to Plaintiff.  Rather, it appears that the majority of rules
and regulations made applicable to Plaintiff through the Manual
related to Prison safety and security procedures.  The work
environment was, after all, a prison where safety and security of
all inmates and workers was a top priority and Aramark was the
independent contractor permitted to perform its services within
those walls.  As such, the fact that Plaintiff is obligated to
follow the safety policies and procedures outlined in the Manual
was not a factor weighing in favor of Plaintiff being deemed an

employee of the County.  Because Defendant maintained control of certain fundamental aspects of the commissary (i.e., use of inmate labor as her co-workers) but had no express contract controlling other aspects of Plaintiff's employment, this Court finds that, on balance, Factor 1 does not weigh in favor of either party.

Based upon the undisputed facts, balancing all of the factors of the <u>Pukowsky</u> test and viewing the evidence in the light most favorable to Plaintiff, this Court funds as a matter of law that Plaintiff was not an employee of the County for purposes of Title VII and NJLAD.  Therefore, Plaintiff cannot sustain a claim against Defendants under either Title VII or NJLAD and this Court will grant Defendants' motion for summary judgment.

**C.   Plaintiff's Due Process Claim**

In Count Three, Plaintiff alleges that Defendants failed to give notice and an opportunity for a hearing (as required by Cumberland County Department of Corrections Policy and Procedure Manual) and therefore violated her procedural due process rights.[11]  In their brief, Defendants argue that (1) Plaintiff was an at-will employee of Aramark and had no right to a hearing

---

[11] The Court assumes that Plaintiff is bringing this action under 42 U.S.C. § 1983 for a violation of Plaintiff's Fourteenth Amendment rights (specifically, the procedural component of the Due Process Clause.)

(which are afforded to County employees) prior to her dismissal
and (2) that Warden Saunders did not fire Plaintiff, but rather
revoked Plaintiff's security clearance pending an investigation
into potentially illegal activities within the Prison.  For these
two reasons, according to Defendants, Plaintiff had no reasonable
expectation that she would be afforded a hearing by Defendants
prior to having her security clearance revoked or being
terminated by her employer, Aramark.[12]

Plaintiff argues that she has made a prima facie case for a
claim of a violation of procedural due process.  Specifically,
Plaintiff contends that she should have been afforded a hearing
prior to her dismissal in accordance with County Department of
Corrections' policies and procedures.  Plaintiff argues that she
had a reasonable expectation that Defendants' procedures would
apply to her since (1) she received the Manual from Defendants
when she began working at the Prison and (2) the Defendants
required her to abide by the rules and regulations spelled out in
the Manual.  (Pl.'s Opp. Br. at 24.)

Both parties acknowledge that the central issue here is
whether Plaintiff was a de facto employee of the County.  If

---

[12] Moreover, according to Defendants, Plaintiff never stated
that she was entitled to due process until Plaintiff filed this
Complaint - not when she was interviewed regarding discovery of
the contraband or during any portion of the ensuing
investigation.  This absence of protest, according to Plaintiff,
demonstrates that even Plaintiff did not believe she had due
process rights.

Plaintiff is a _de_ _facto_ County employee, an issue exists whether
Plaintiff had a reasonable expectation that the administrative
procedures Defendants established for disciplining County
employees would apply to her.  However, in this case, summary
judgment as to Plaintiff's due process claim will be granted and
this claim dismissed for two reasons.  First, as discussed in
Section III.B, _supra_, the Court determined that Plaintiff was not
a _de_ _facto_ employee of either Cumberland County or the Cumberland
County Board of Chosen Freeholders.  As such, Plaintiff is not
entitled to the protections or due process procedures established
in the Manual as these due process are intended to apply only to
County employees.  Second, the protections are only afforded an
employee who is terminated by Cumberland County.  Plaintiff was
not terminated by the County - instead, her security clearance
was suspended pending an investigation into the charge that
Plaintiff was bringing contraband into the Prison (a charge
Plaintiff later admitted was true).  It was not until Plaintiff
discussed the revocation of her security clearance with her
supervisor Jim McNally that Plaintiff was then terminated by
Aramark.  Defendants are entitled to summary judgment on Count
Three.

> **D.   Plaintiff's Tortious Interference with Contract Claim**

New Jersey has adopted the Restatement (Second) of Torts
definition of tortious interference with existing contract.  _See_

24

Restatement (Second) of Torts § 766 (1979); <u>Norwood Easthill</u>
<u>Assocs. v. Norwood Easthill Watch</u>, 222 N.J. Super. 378, 383 (App.
Div. 1988); <u>Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.</u>,
870 F. Supp. 1237 (D.N.J. 1994).  To establish a claim of
tortious interference with contract in Count Four, a plaintiff
must prove: (1) that she was a party to an existing contractual
relationship; (2) the defendant intentionally interfered with
that contractual relationship; and (3) that plaintiff suffered
damages resulting from the interference.  See <u>Norwood Easthill</u>
<u>Assocs.</u>, 222 N.J. Super. at 384.  In addition, a plaintiff must
also show that the defendant's interference was undertaken with
"malice."  <u>See</u> <u>Printing Mart-Morristown v. Sharp Electronics</u>
<u>Corp.</u>, 116 N.J. 739, 751 (1989).  The term "malice" "does not
require ill will toward the plaintiff, but rather means 'that the
harm was inflicted intentionally and without justification or
excuse.'"  <u>Matrix Essentials, Inc.</u>, 870 F. Supp. at 1248 (citing
<u>Printing Mart-Morristown</u>, 116 N.J. at 751.)  To show malice, "the
plaintiff must show that the defendant's conduct was...a
violation of standards of socially acceptable conduct."  <u>Id.</u>
(citing <u>Baldasarre v. Butler</u>, 254 N.J. Super. 502, 526 (App. Div.
1992)).[13]  Plaintiff argues that evidence of malice lies in the

---

[13] According to the New Jersey Supreme Court in <u>Printing</u>
<u>Mart</u>, the Restatement (Second) of Torts § 767 inquiry into
whether conduct is improper "is substantially similar to the
'malice' standard currently applied by New Jersey courts."  116
N.J. at 752.  Specifically, the Restatement sets forth seven

County Defendants' deviation from procedures for revoking a security clearance.

According to Defendants, Plaintiff cannot demonstrate that Defendants acted with malice in interfering with Plaintiff's employment contract with Aramark.  (Def.'s Reply Br. at 8-9.) Defendants argue that Plaintiff was caught -- and ultimately admitted to -- distributing contraband to prison inmates, a violation of both Aramark's Business Conduct Policy and the Prison's security policies.  (Id.)  By revoking her security clearance, according to Defendants, Warden Saunders simply reacted appropriately to a situation where an individual working as an independent contractor at the prison violated prison security rules.  Plaintiff counter-argues that Defendants' internal affairs officers failed to follow Cumberland County prison procedures in affording an employee a hearing before revoking her security clearance.  According to Plaintiff, such a failure to abide by the prison's policies and procedures constitutes "malice."

---

factors that a court should consider in determining whether intentional interference with a contract is improper: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the party with whom the actor interferes; (d) the interests sought to be advanced by the actor; (e) the social interest in protecting the freedom of action of the actor and the contractual interests of the other party; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

If Plaintiff were a County employee, an intentional deviation from its procedures for revoking a security clearance could supply evidence of malice. See generally Joseph v. Passaic Hosp. Assoc., 38 N.J. Super. 284, 290 (App. Div. 1955). Such circumstantial evidence of malice is absent here, however, because Plaintiff was not a County employee and was not owed the procedural protections given to County employees. Here, Defendants' actions do not constitute malice under the standards established in Matrix Essentials. In suspending Plaintiff's security clearance after determining that she had violated prison rules, Warden Saunders was simply acting within his discretion to maintain security within the Prison. Moreover, Plaintiff has failed to raise a genuine issue of material fact that Defendants sought anything else but to enforce prison rules and suspend the security clearance of an individual who was violating those rules; there is nothing in the record to suggest that this action was taken without justification. Warden Saunders was merely enforcing rules that apply to independent contractors working in the Prison - an environment where it is essential that prison officials maintain control over the operation of the Prison by excluding contraband. Finally, Plaintiff has not demonstrated a causal nexus between her lack of a hearing and the harm she suffered, since she has admitted the facts of smuggling

contraband food into the jail for prisoners.  No reasonable jury could find for Plaintiff upon these issues.

Because Plaintiff has failed to demonstrate the existence of a genuine issue of material fact regarding the suspension of Plaintiff's security clearance (an act that eventually lead to Aramark terminating Plaintiff), this Court will grant Defendants' motion for summary judgment as to Plaintiff's tortious interference claim.

## IV. CONCLUSION

This Court will grant Defendants' motion for summary judgment.  The Court concludes that Plaintiff was not a de facto employee of the County.  As such, Plaintiff cannot maintain a cause of action under Title VII or NJLAD.  Similarly, Plaintiff's claim for a violation of her procedural due process claims also fail; Plaintiff is not a County employee and has failed to present any evidence that Plaintiff had a reasonable expectation of being afforded the procedural rights afforded to County employees prior to Defendants' revoking Plaintiff's security clearance.  Finally, the Court finds that Plaintiff has presented no triable issues of fact suggesting that Defendants acted with malice when Defendants sought to enforce prison rules by revoking Plaintiff's security clearance after discovering that she violated the prison's rules prohibiting contraband.

The accompanying Order is entered.


**September 8, 2006**                          **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               United States District Judge